Youssef H. Hammoud (SBN: 321934)
**HAMMOUD LAW, P.C.**
3744 E. Chapman Ave., #F12269
Orange, CA 92859
T: (949) 301-9692
F: (949) 301-9693
E: yh@lawhammoud.com

*Attorneys for Plaintiff,*
*Christian Sloan*

# IN THE UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN SLOAN,<br><br>          Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC.<br><br>          Defendant. | Case No.:        5:23-cv-00446<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL<br><br>1.  FCRA, 15 U.S.C. §1681 *et seq.*<br>2.  CCRAA, Cal. Civ. Code § 1785 *et seq.* |

Plaintiff Christian Sloan ("Plaintiff"), through his attorneys, alleges the following against Equifax Information Services LLC ("Equifax" or "Defendant").

## INTRODUCTION

1.      Count I of Plaintiff's Complaint is based on violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, against Defendant Equifax, for failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff when preparing his report in violation of

1681e(b), failing to conduct a reasonable reinvestigation of Plaintiff's disputes in violation of § 1681i, and failing to clearly and accurately disclose to Plaintiff all the information in his file at the time of his request in violation of § 1681g(a)  and § 1681j(2).

2.    Count II of Plaintiff's Complaint is based on violations of the Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785 *et seq.*, against Defendant Equifax, for failing to conduct a reasonable reinvestigation of Plaintiff's disputes in violation of Cal. Civ. Code § 1785.16 and failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff when preparing his report in violation of Cal. Civ. Code § 1785.14.

## JURISDICTION AND VENUE

3.    The District Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681.

4.    Supplemental jurisdiction of the court arises under 28 U.S.C. § 1367 as the state law claims are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5.    Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

6.      Defendant transacts business here; as such, personal jurisdiction is established.

## **PARTIES**

7.      Plaintiff Christian Sloan is a natural person residing in Redlands, California.

8.      Plaintiff is a *consumer* as defined by the FCRA, 15 U.S.C. §1681a(c) and CCRAA, Cal. Civ. Code § 1785.3(b).

9.      Defendant Equifax is a credit reporting agency, as defined in 15 U.S.C. § 1681a(f) and Cal. Civ. Code § 1785.3(d). Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax can be served through their registered agent, Prentice Hall Corporation, located at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

10.     Defendant Equifax disburses *consumer reports* to third parties under contract for monetary compensation.

11.     At all relevant times, Defendant acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

12.     Any violation by Defendant was not in good faith, was knowing, negligent, willful, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

## **FACTUAL ALLEGATIONS**

13.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

14.     While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

15.     Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

16.     Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

17.    The FCRA is intended to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

18.    Equifax, one of the three major consumer reporting agencies (at times referred to collectively as "CRAs" and individually as a "CRA") in the United States, regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports.

19.    The CRA Defendant consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

20.    The CRA Defendant obtains consumer information from various sources. Some consumer information is sent directly to the CRAs by furnishers, and other information is independently gathered by CRAs from third party providers, vendors, or repositories, like computerized reporting services like PACER and Lexis-Nexis.

21.    The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make lending decisions.

22.    Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in the CRA Defendant's consumer reports.

23.    The information Defendant includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

24.    FICO Scores are calculated using information contained in the CRA Defendant's consumer reports.

25.    FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

26.    FICO Scores factor in the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

    a) "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

    b) The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA indicates that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

27.    Lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

28.    DTI compares the total amount a consumer owes to the total amount a consumer earns.

29.     A consumer's income, however, is not included in their consumer report; only their amount of debt is.

30.     The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms (e.g., higher interest and lower credit limits).

*Allegations Specific to Equifax's Violations*

31.     In or around March 2022, Plaintiff was attempting to obtain a mortgage pre-approval.

32.     However, the mortgage broker was unable to procure a credit report for Plaintiff from Equifax.

33.     To Plaintiff's surprise, the mortgage broker informed Plaintiff that Equifax indicated Plaintiff's name was not associated with his social security number.

34.     Plaintiff felt embarrassed, confused, and feared that someone stole his social security number.

35.     On or about March 9, 2022, Plaintiff contacted Equifax via telephone.

36.     Plaintiff informed Equifax that he believed he was the victim of identity theft because he was unable to procure his credit report and was being told that his social security number is associated with someone else.

37.    In response to Plaintiff's dispute, Equifax requested that Plaintiff provide it with information confirming his identity.

38.    Plaintiff did as he was instructed and provided Equifax with proof of his identity, including but not limited to, his driver's license, a copy of his social security card, his passport, and bills reflecting his current address via fax on March 9, 2022.

39.    Again, on or about March 22, 2022, Plaintiff contacted Equifax via telephone to follow up on the status of his dispute.

40.    In response, the Equifax agent informed Plaintiff that it did not have any of the information he faxed on March 9, 2022, and requested that Plaintiff resend all the information through the mail.

41.    On or about March 29, 2022, Plaintiff sent Equifax with all the information that it requested via certified mail.

42.    Upon information and belief, Equifax received the documents via certified mail.

43.    Thereafter, Plaintiff never heard from Equifax for several weeks.

44.    Equifax did not send Plaintiff any dispute results in the mail, despite being required to under the FCRA.

45.    Plaintiff did not hear back from Equifax regarding his dispute, either through the mail or through any other mode of communication.

46.    As such, Plaintiff reached out to Equifax on several occasion over the next few months, including but not limited to, May 6, 2022 and June 14, 2022, to check the status of dispute, and to re-dispute the issue to ensure that it gets corrected.

47.    Again, Plaintiff did not hear back from Equifax for several weeks and did not receive anything in the mail.

48.    Thereafter, Plaintiff once again reached out to Equifax on or about August 8, 2022 to dispute the inaccurate information Equifax was reporting about him.

49.    Equifax once again requested that Plaintiff send him documents for its review to process his dispute.

50.    Plaintiff once again faxed all the requested documents to Equifax on or about August 8, 2022.

51.    Plaintiff did not hear back from Equifax for several months nor did he receive anything in the mail regarding his dispute.

52.    Thereafter, Plaintiff once again reached out to Equifax on or about December 9, 2022 to check the status of his dispute.

53.    Equifax once again informed Plaintiff that it had no record of the documents he sent and it once again requested he resend the documents to Equifax.

54.    Plaintiff did as he was instructed and faxed the requested documents to Equifax on December 9, 2022.

55.     Plaintiff did not hear back from Equifax nor did he receive anything in the mail regarding his dispute.

56.     On or about February 1, 2022, Plaintiff proceeded to file a police report with the City of Redlands Police Department.

57.     Plaintiff's police report indicated that he believed he was a victim of identity theft because he found out that his social security number was being used with another name with respect to his Equifax credit report and he found out about the issue when he was trying to get a pre-approval for a mortgage in March 2022.

58.     On or about February 9, 2023, Plaintiff sent a dispute letter to Equifax via certified mail.

59.     The dispute letter indicated that Plaintiff's identity has been wrongfully used and his social security number is being used by someone with a different name.

60.     Furthermore, Plaintiff provided a copy of the police report along with documentation proving his identity.

61.     In addition, Plaintiff's dispute letter provided his full name and address and requested that Equifax match him with his social security number.

62.     Plaintiff also informed Equifax that he had previously disputed this same issue on multiple occasion with it.

63.     Finally, Plaintiff also requested a copy of all the information that Equifax has on him so he could identify the inaccurate information.

64. In or around March 2023, Defendant Equifax, for the first time, responded to Plaintiff's dispute.

65. However, Equifax's response stated that it was unable to locate a credit file for him for one of the following reasons:

    i. "You have not applied for credit recently,"

    ii. "You have not actively used credit in the past ten years, or"

    iii. "You have not lived in the United states or have not been issued a U.S. Social Security Number."

66. Defendant Equifax's reporting that Plaintiff did not have a credit file because of the reasons it outlined is patently inaccurate.

67. Plaintiff has applied for credit recently, has several open revolving credit card accounts, and has always lived in the United States and has been issued a social security number.

68. Plaintiff has multiple revolving credit card accounts that he opened over the years, from 2020 through the present.

69. Plaintiff has had an auto loan account that was opened in 2020, and was subsequently paid satisfactorily.

70. Plaintiff has also applied for credit in the last 2 years, including his mortgage application and applications with other creditors for different credit cards.

71.    In fact, Plaintiff has had no issue obtaining his Trans Union and Experian credit reports.

72.    Moreover, Trans Union and Experian are reporting several open and active credit accounts, and are reflecting that Plaintiff has applied for credit recently.

73.    Upon information and belief, the creditors furnishing credit information to Trans Union and Experian are also actively furnishing the same information to Defendant Equifax.

74.    Upon information and belief, Equifax's inaccurate reporting is the result of the failure to maintain reasonable procedures to ensure maximum possible accuracy of consumer reports.

75.    Upon information and belief, Equifax's unreasonable procedures related to identification mixed Plaintiff's identity with that of another individual, causing Plaintiff's social security number to be associated with someone else.

76.    Notably, the other two national CRAs (Experian and Trans Union), have a credit file for Plaintiff and are accurately reporting all of his open, active, and past credit accounts.

*Plaintiff's Damages*

77.    Plaintiff was significantly harmed by Defendant's gross violations of the law.

78.    Plaintiff was unable to even be considered for a mortgage pre-approval because Equifax reported inaccurate information, specifically, that Plaintiff was not associated with his own SSN.

79.    Plaintiff was embarrassed and humiliated because the inaccurate reporting by Defendant made it seem as though Plaintiff was attempting to commit fraud.

80.    Moreover, the reporting by Defendant chilled Plaintiff from applying for any credit.

81.    Plaintiff, along with his wife and his toddler, are currently living with Plaintiff's mother.

82.    Plaintiff and his wife have wanted to either buy or rent a home in Los Angeles County, closer to Plaintiff's work.

83.    However, Defendant's inaccurate reporting blocked Plaintiff's attempts at obtaining a mortgage pre-approval.

84.    Moreover, because Defendant was reporting that Plaintiff was not associated with his own SSN and would not procure a credit report for him, Plaintiff could not apply for any rental properties.

85.    Plaintiff and his wife's plan to move to Los Angeles county were effectively estopped.

86.    As a result, Plaintiff has had to endure the tiresome commute from Redlands to Los Angeles county every morning requiring him to leave his home around 3:30am to arrive at work on time.

87.    In addition, the tiresome commute from Redlands to Los Angeles county and back every day has caused Plaintiff to feel extremely tired throughout the day and when he arrives at home.

88.    As a result, when Plaintiff gets home after work, he is extremely tired and attempts to rest as much as he can before his next day of work which starts extremely early.

89.    As such, Plaintiff is unable to spend quality with his family, including his wife and infant son, and this has, on more than one occasion, resulted in arguments between Plaintiff and his wife.

90.    Moreover, Equifax's violations and failure to procure a credit report for Plaintiff has made him feel as though he is not able to support and provide for his family, causing him further emotional distress and mental pain and anguish.

91.    Had Defendant Equifax accurately reported Plaintiff's credit information, he would have either purchased a home or rented a home in Los Angeles county.

92.    As a result, Plaintiff would been able to significantly reduce his commute to work, thereby resulting in additional time he would be able to spend with his family.

93.    Defendant's actions were malicious and oppressive and caused Plaintiff to suffer significant emotional distress and mental pain and anguish, including but not limited to, stress, anxiety, headaches, sleepless nights, confusion, embarrassment, and frustration.

94.    As a result of Defendant's actions, Plaintiff suffered from loss of time trying to correct the inaccurate reporting and out-of-pocket costs for the dispute letters sent to Defendant.

95.    In addition, Plaintiff's wife suffers from an on-going medical condition that required her to undergo two (2) brain surgeries in 2022.

96.    In fact, on or about August 8, 2022, when Plaintiff reached out to Defendant to dispute the inaccurate information and provide Equifax with the documents it requested, his wife underwent brain surgery that same day.

97.    Plaintiff and his wife rushed to speak to Defendant before her surgery and rushed to fax the documents in an effort to get the problem resolved before she underwent another surgery.

98.    The actions by Defendant have exacerbated an already stressful situation for Plaintiff.

- 16 -

99.    As a result of the inaccurate reporting, Plaintiff was dissuaded from applying for credit in fear that he would be denied because Defendant was reporting that Plaintiff did not have a credit file and his own SSN was associated with someone else.

**COUNT I**
**Defendant Equifax**
**(Violations of the FCRA, 15 U.S.C. § 1681 *et seq*)**

100.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

101.    The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

102.    Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

103.    The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

104.    The FCRA requires credit reporting agencies, like Equifax, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

105.    Defendant negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of information contained within Plaintiff's consumer report.

106.    Further Defendant, negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of information contained within Plaintiff's consumer report, including failing to report any credit information regarding Plaintiff.

107.    Consequently, Defendant routinely report inaccurate, and materially misleading information about Plaintiff, without verifying the accuracy of this information, or updating this information as required by § 1681(e)(b) when Defendant possesses information inconsistent with the reported information, and possesses information establishing that the reported information is in fact inaccurate.

108.    Defendant knew or should have known of its obligations under the FCRA. These obligations are well established by the plain language of the FCRA, in promulgations of the Federal Trade Commission, well-established case law, and in prior cases involving Defendant from which Defendant is on notice of their unreasonable procedures.

109.    Defendant has obtained or has available substantial written materials that apprised Defendant of duties and obligations mandated by the FCRA.

110.    Defendant violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer report.

111.    Defendant possesses information from which Defendant should know the reported information is inaccurate.

112.    Defendant is on notice from Plaintiff's previous disputes and from previous communications received from the multiple furnishers that Plaintiff does indeed have a credit file, has active and open credit accounts, and has applied for credit recently.

113.    Defendant Equifax is on notice from Plaintiff's multiple disputes regarding the blank credit report.

114.    Defendant violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's consumer report, and also by failing to report accurate information when placed on notice that the information Defendant was reporting is inaccurate, and/or otherwise contradicted by information known by Defendant or reasonably available to Defendant.

115.    The inaccurate reporting of Plaintiff's information has caused Plaintiff to suffer from stress, anxiety, headaches, frustration, and emotional and mental pain

- 19 -

and anguish, a decreased credit score and decreased credit worthiness. Moreover, the inaccurate reporting of Plaintiff's accounts has deprived Plaintiff of credit opportunities and dissuaded Plaintiff from applying for any credit.

116.  Even after Plaintiff notified Equifax of the inaccurate information they included in Plaintiff's credit file, it continued to inaccurately report that Plaintiff did not have a credit file.

117.  When a consumer disputes the accuracy or completion of information included in a CRAs' credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

118.  When conducting its reinvestigation of disputed information in a consumer report, the credit reporting agency is required to "review and consider all relevant information submitted by the consumer."

119.  Additionally, the CRAs must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

120.    Equifax's violations of 15 U.S.C. § 1681i include, but are not limited to the following:

    i.    Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

    ii.    Failing to consider all relevant information while investigating Plaintiff's dispute.

121.    Instead of reasonably reinvestigating Plaintiff's dispute, Defendant Equifax continued to repeatedly request that Plaintiff send him the same information he had sent on multiple occasions in order for it to process his dispute.

122.    Moreover, Defendant Equifax failed to provide Plaintiff with his dispute results for all of his disputes.

123.    Defendant's acts, as described above, were done willfully and knowingly.

124.    Alternatively, Defendant was negligent, entitling Plaintiff to recover damages pursuant to 15 U.S.C. § 1681o.

125.    Defendant's inaccurate and negative reporting damaged Plaintiff's creditworthiness, as Defendant's inaccurate reporting made it seem as though Plaintiff does not have a credit file with Equifax and that Plaintiff's own SSN was not his.

126.    Defendant is a direct and proximate cause, as well as a substantial factor in causing actual damages and harm to Plaintiff, including, but not limited to, embarrassment, anguish, emotional and mental pain, credit score decrease, credit worthiness decrease and dissuading Plaintiff from applying for any credit.

127.    Further, Defendant Equifax failed to, upon request by Plaintiff, clearly and accurately disclose to him all the information in his consumer file at the time of request as required under 15 U.S.C. § 1681g(a).

128.    Defendant Equifax failed to provide a consumer report to Plaintiff not later than 15 days after the date on which the request was received as required under 15 U.S.C. § 1681j(a)(2).

129.    Defendant is therefore liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 et seq.

130.    Consequently, Plaintiff suffers damages, including credit harm, loss of credit opportunity, and other financial harm.  Plaintiff also suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

## COUNT II
### Defendant Equifax
### (Violations of the Cal. Civ. Code § 1785 *et seq.*)

131.    Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

132.    Defendant violated the CCRAA. Defendant's violations include, but are not limited to, the following:

133.    Defendant violated Cal. Civ. Code § 1788.14(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff when preparing a consumer credit report.

134.    Defendant violated Cal. Civ. Code § 1785.16 *et. seq.*, including but not limited to, by:

      i.    failing to reinvestigate the disputed information;

      ii.    failing to review and consider all relevant information submitted by Plaintiff with respect to the disputed information;

      iii.    failing to notify the Plaintiff of the dispute results;

135.    Defendant's acts, as described above, were done willfully and knowingly.

136.    Consequently, Defendant is liable to Plaintiff for actual damages, punitive damages, and attorneys' fees and costs pursuant to Cal. Civ. Code § 1785.31.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Christian Sloan respectfully requests judgment be entered against Defendant Equifax Information Services, LLC for the following:

A. Declaratory judgment that Defendant violated the FCRA;

B. Declaratory judgement that Defendant violated the CCRAA.

B. Actual damages against Defendant pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

C. Statutory damages against Defendant of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1);

D. Punitive damages against Defendant pursuant to 15 U.S.C. § 1681n(a)(2);

E. Costs and reasonable attorney's fees against Defendant pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F. Actual damages against Defendant pursuant to Cal. Civ. Code § 1785.31(a)(2)(A);

G. Punitive damages in the amount of $5,000 for each violation as the court deems proper against Defendant pursuant to Cal. Civ. Code § 1785.31(a)(2)(B);

H. Costs and attorneys' fees pursuant to Cal. Civ. Code § 1785.31(a)(1);

I.   Punitive damages to be determined at trial, for the sake of example and punishing Defendant for their malicious conduct, pursuant to Cal. Civ. Code § 3294(a);

F.   Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

G.   Any other relief that this Court deems appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.


Respectfully submitted this 14th day of March 2023.

*/s/ Youssef Hammoud*
Youssef H. Hammoud (SBN: 321934)
**HAMMOUD LAW, P.C.**
3744 E. Chapman Ave., #F12269
Orange, CA 92859
T: (949) 301-9692
F: (949) 301-9693
E: yh@lawhammoud.com

*Attorneys for Plaintiff,*
*Christian Sloan*

- 25 -